UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:

**Roberto Vasconcelo,** individually and on behalf of others similarly situated,

    Plaintiff,

v.

**Miami Auto Max, Inc.**, d/b/a
"Car Depot of Miami" and "Car Depot of Miramar", and;
**Kennya Quesada**, individually,

    Defendants.
_____/

CLASS REPRESENTATION

# FAIR LABOR STANDARDS ACT COMPLAINT

Plaintiff Roberto Vasconcelo, and others similarly situated, sue Defendants, Miami Auto Max, Inc., a Florida corporation, d/b/a "Car Depot of Miami" and "Car Depot of Miramar", and; Kennya Quesada, individually, and allege:

## JURISDICTIONAL ALLEGATIONS

1. This is an action to recover money damages for unpaid minimum wages brought under the laws of the United States of America. This Court has jurisdiction pursuant to the Fair Labor Standards Act, 29 U.S.C., Sections 201-219, inclusive ("FLSA").

2. Plaintiff Roberto Vasconcelo works as automobile salesperson at a conglomerate of automobile dealership locations known as "Car Depot of Miami" and "Car Depot of Miramar" in Miami-Dade County, Florida and Broward County, Florida, respectively. Mr. Vasconclo, together with any other person who may hereafter consent to join in this lawsuit, is an "employee" within the meaning of 29 U.S.C. §203(e).

3. Defendant Miami Auto Max, Inc. d/b/a "Car Depot of Miami" and "Car Depot of Miramar", is a Florida corporation owned and/or operated and controlled by and through, directly

and indirectly, Defendant Ms. Kennya Quesada, who operates at least two related, closely, privately held automobile dealership locations as a single conglomerate under the fictitious names of "Car Depot of Miami" and "Car Depot of Miramar", among others. Defendant Ms. Kennya Quesada is an employer of the Plaintiffs in that she, directly and indirectly through her designees, exercised operational control over both dealership operations. In fact both dealerships are advertised together in web sites that are linked to each other. (See http://www.cardepotflorida.com).

4. Defendants, each of them individually and together as a group, are a "person" and an "employer" within the meaning of the 29 U.S.C. §203 (a) and (d) and may be hereinafter referred to as the "Employer". Moreover, this same "Employer", each individually or together, is an enterprise engaged in commerce within the meaning of 29 U.S.C. §203(s).

5. Jurisdiction is conferred upon this Court by 28 U.S.C. §1337, and by 29 U.S.C. §216(b). The Employer is, and at all times material to this action was, an organization which sells and/or markets and/or transports services and/or goods to customers in Florida and throughout the United States. Upon information and belief, the annual gross revenue of the Employer was at all times material to this action in excess of $500,000.00 per annum.

6. By reason of the foregoing, the Employer is, and at all times material to this action was, an enterprise engaged in commerce or in the production of goods for commerce as defined in Sections 3(r) and 3(s) of the FLSA, 29 U.S.C., §§ 203(r) and 203(s). Moreover, the Plaintiff was, and others similarly situated were, individually engaged in commerce by virtue of the nature of the work performed.

## CLASS ALLEGATIONS

7. The named Plaintiff is similarly situated to an untold number of other salespersons who work or have worked for the Employer at the dealership locations known as "Car Depot of

Miami" and "Car Depot of Miramar" during any part of the past three years at either of the related dealerships operating under the stewardship of Defendant Kennya Quesada and her family and designees.

8. The named Plaintiff and those similarly situated work or worked under a "commissions-only" pay plan in place at both dealerships. On a weekly basis sales persons are paid either the commissions generated during an established weekly pay period based upon the number of automobiles sold by each respective salesperson, or if greater, they are provided a variable draw of either a flat $400.00, or some other amount calculated as a function of approximate hours logged or worked. In either case, any amounts drawn -- on account of either hours logged or on account of the flat weekly draw -- must be repaid to their Employer in perpetuity until repaid in full.

9. When employees took draws in excess of commissions earned during weekly pay periods, they were considered to be "in the hole". Any amount taken as a "draw" during a given pay-period is not kept by the sales person, but rather represents a financial obligation owing to the Employer, which is required to be systematically "paid back" or returned by the employee through deductions from future commissions earned as though the Employer were some sort of super-lien judgment creditor. The "draws" were treated as money owed to the employer in perpetuity, until completely repaid from earned commissions or otherwise.

10. The named plaintiffs and those similarly situated were routinely scheduled and required to work approximately fifty-five (55) hours per week or more. However, because the sales persons are only permitted to keep the actual commissions they generate, they actually work well in excess of the number of hours they are scheduled to work in order to make sufficient sales. Accordingly, throughout many pay periods, the Plaintiff and those similarly situated are paid less than the minimum wage required for every hour worked during corresponding pay periods.

11. The employer maintains a method of time-keeping which would or could reflect the actual number of hours worked by sales personnel, however, any draw advanced, whether a flat rate or whether based upon hours supposedly worked, represents not wages which the employees are allowed to keep unconditionally, but rather a rolling debt owing to the Employer. Accordingly, the employees are discouraged from logging hours they work to avoid owing the Employer for the number of hours they work.

12. Further, when a salesperson finds himself or herself "in the hole" for too long, the Employer takes away their time card, so the Plaintiff, and others similarly situated, are no longer permitted even a draw for the hours they work, and are effectively denied the ability to log hours work until "the hole" obligation is repaid through either forfeiture of earned commissions or free labor represented by the non-payment of actual hours worked "of the clock".

13. Additionally, the Employer further avoids the responsibility of paying a minimum wage to sales personnel by routinely failing to make wage payments on the regularly scheduled pay day during every established pay-periods and by taking unjustified deductions from the time actually logged by employees as well as from earned commissions.

14. On numerous occasions during the period of time covered by this Complaint, the Plaintiff and those similarly situated, generated fewer sales commissions than are necessary to cover the required minimum wage for all hours worked, or they sometimes were not paid all of their earned commissions and bonuses under the pretext that they were unqualified for such compensation as a result of being "in the hole".

**ATTORNEY'S FEES**

15. Plaintiff has engaged the services of the undersigned attorneys and have agreed to pay reasonable attorney's fees for their services.

## ENTITLEMENT TO ATTORNEY'S FEES

16. Plaintiffs are entitled to an award of prevailing party attorney's fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 and other related authority.

## VIOLATION OF THE FAIR LABOR STANDARDS ACT
### (Failure to Pay Minimum Wages)

17. At all times during their employment, the Plaintiff, and others similarly situated, were employees required to be finally and unconditionally paid a minimum hourly wage during each respective pay period for every hour worked for the Employer during said pay period.

18. Since on or about May, 2014 through the present ("the applicable period covered by this Complaint"), the Employer violated the provisions of the FLSA, 29 U.S.C. §206 and §215(a)(2) by failing to pay the Plaintiff and other similarly situated salespersons a minimum hourly wage during numerous applicable pay periods by, among other factors: (a) failing to finally and unconditionally pay at least the applicable minimum hourly wage for every hour worked during numerous covered pay periods, as required by law; (b) making unjustified deductions and reductions from earned compensation to minimize payroll obligations, and; (c) by failing to make timely wage payments on the regularly scheduled pay date established by the Employer.

19. At all times material to this action, the Employer failed to comply with 29 U.S.C. Sections 201-219 and 29 C.F.R., Sections 516.1, *et. seq.* in that Plaintiff and those similarly situated performed services for the benefit of the Defendant for which they were paid below the minimum wage rates required under both federal law, and under applicable Florida law and Constitution, whose occasionally higher minimum wage rates are made applicable under the FLSA. Other persons who may become plaintiffs in this action, also provided labor as hourly-rate employees and/or former employees of the Employer and have also been systematically paid less than the applicable minimum hourly wage, for the reasons set forth above.

20. The Employer knew or showed a reckless disregard for the provisions of the FLSA concerning the payment of minimum wages and remains owing the named Plaintiff and other similarly situated employees a minimum wage for every hour worked during the three year period preceding this lawsuit, and an equal amount as liquidated damages.

## JURY DEMAND

21. Plaintiff, Roberto Vasconcelo, and those similarly situated who hereafter consent to join this lawsuit, demand trial by jury of all issues, claims and defenses in this action that are triable as of right by a jury.

WHEREFORE, Plaintiff, and others similarly situated demand the following: payment of minimum wages for every hour worked by them and those similarly situated during every pay period, or as much as is allowed by the Fair Labor Standards Act, whichever is greater, in an amount to be proven at the time of trial; an additional like amount as liquidated damages; an award of reasonable attorney's fees and costs, and; any and all such other relief which this Court may deem reasonable under the circumstances. Also, in the event that Plaintiffs do not recover liquidated damages as allowed, then Plaintiffs and those similarly situated demand an award of prejudgment interest as a lesser alternative to liquidated damages.

Dated: May 12, 2017

Anthony F. Sanchez, P.A.
Counsel for Plaintiffs
6701 Sunset Drive, Suite 101
Miami, FL 33143
Tel.: 305-665-9211
Fax: 305-328-4842
E-mail: afs@laborlawfla.com

By: /s/Anthony F. Sanchez\_
Anthony F. Sanchez
Florida Bar No. 0789925